Robert Farris-Olsen
Brian J. Miller
MORRISON, SHERWOOD, WILSON & DEOLA
P.O. Box 557
401 N. Last Chance Gulch
Helena, MT 59624
(406) 442-3261
(406) 443-7294 Facsimile
rfolsen@mswdlaw.com
bmiller@mswdlaw.com

*Attorneys for Plaintiffs*

FILED
JUN 12 2019
ANGIE SPARKS, Clerk of District Court
By _____ Deputy Clerk

FILED
7/22/2019
Clerk, U.S. District Court
District of Montana
Helena Division

INDEXED

## MONTANA FIRST JUDICIAL DISTRICT
## LEWIS AND CLARK COUNTY

| | |
|---|---|
| DENNIS MCALPIN and CARRIE MCALPIN,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER; and JOHN DOES 1-10,<br><br>Defendants | Cause No. DDV-2019-714<br><br>**COMPLAINT AND JURY DEMAND**<br><br>Pd<br><br>JAMES P. REYNOLDS<br>Presiding Judge |

Comes now Plaintiffs Dennis and Carrie McAlpin and for their Complaint against Defendant Nationstar Mortgage, LLC, d/b/a Mr. Cooper ("Nationstar") state and allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1. The McAlpins are residents of East Helena, Lewis and Clark County, Montana and reside at 105 E. Dudley, East Helena, MT 59635.

2. Defendant Nationstar is a national mortgage loan servicing entity that operates under the name Mr. Cooper.

3. This Court has jurisdiction over this matter pursuant to, among other things, § 30-14-133, MCA, §§ 27-8-101 et seq, MCA, and §§ 27-19-101 et seq., MCA.

4. Venue is proper in this County as the McAlpins reside there and Nationstar does business therein.

## FACTS

5. On or about May 28, 2015, the McAlpins purchased their home at 105 E. Dudley, East Helena, Lewis and Clark County, Montana.

6. The home was purchased with a loan and secured by a deed of trust with the home as security for the loan.

7. At the time of purchase, Dennis McAlpin was employed by the state of Montana and was able to make his payments.

8. At some point after purchasing the home, Envoy Mortgage began servicing the loan, through its subservicer, LoanCare LLC.

9. Mr. McAlpin regularly made his payments to Envoy and managed to stay current. Then, in February, 2018, Mr. McAlpin left his employment with the State and withdrew his retirement.

10. Mr. McAlpin used his retirement to continue making payments through August, 2018.

11. Prior to missing his first payment, Mr. McAlpin notified Envoy that he was going to eventually default, and requested loss mitigation assistance.

12. Thereafter, the McAlpins applied to Envoy for hardship assistance. They first submitted an application on or about August 3, 2018, and submitted an application with the relevant documentation.

13. But, before the application could be evaluated, the servicing of the McAlpins' loan was transferred to Nationstar Mortgage LLC, d/b/a Mr. Cooper. The transfer was effective on or about October 2, 2018.

14. As part of the servicing transfer, Envoy sent Nationstar the McAlpins' loss mitigation assistance package. Yet, Nationstar refused to evaluate the information provided and required the McAlpins to resubmit their loss mitigation application.

15. Nationstar again solicited the McAlpins for a loan modification by letter dated on or about November 7, 2018.

16. Subsequently, on or about November 26, 2018, the McAlpins resubmitted a loss mitigation application to Nationstar.

17. Despite providing the requested documents, on or about December 22, 2018, Nationstar denied the McAlpins for any sort of loss mitigation. As justification, Nationstar stated that the McAlpins had not provided all the required documentation. This was not true.

18. So, the McAlpins reapplied, and submitted another application on December 31, 2018, with a supplemental document submission on or about February 12, 2019.

19. Thereafter, on or about February 13, 2019, Nationstar had a notice of trustee's sale filed. The notice set the sale date for July 11, 2019, at 11:00 a.m. at the Lewis and Clark County Courthouse.

20. As of February 13, 2019, Nationstar had a complete loan application, but had not yet evaluated it for a loan modification.

21. Nevertheless, on or about February 14, 2019, Nationstar again solicited the McAlpins for a loan modification, advising them to submit a Uniform Borrower Assistance Form (UBAF) and an IRS 4506-T form (tax transcripts).

22. The McAlpins submitted these documents on or about March 11, 2019, to Nationstar.

23. On or about March 16, 2019, Nationstar requested that the McAlpins submit a hardship affidavit with relevant documentation. At this point, Nationstar already possessed a copy of the McAlpins hardship letter.

24. Additionally, though, the UBAF includes a "Hardship Affidavit". On the UBAF Hardship Affidavit, the McAlpins identified unemployment and a reduction in income as the case of the hardship. As such, the form noted "No hardship documentation required."

25. The McAlpins submitted the requested documents on or about March 23, 2019. With this submission, the McAlpins had submitted a complete application.

26. On or about March 28, 2019, Nationstar advised the McAlpins that, while their application was complete as of March 23, 2019, Nationstar now needed 30 days worth of paystubs.

27. On or about April 1, 2019, the McAlpins submitted the paystubs via facsimile. Mr. McAlpin submitted the paystubs again via facsimile on or about April 9, 2019.

28. A few days later on April 11, 2019, Nationstar advised Mr. McAlpin he needed to resubmit the paystubs because the information was not legible. Mr. McAlpin had until May 11, 2019 to submit the paystubs.

29. So, Mr. McAlpin submitted the paystubs on or about April 15 and again on May 3, 2019.

30. Thereafter, on or about May 5, 2019, Nationstar again solicited the McAlpins for a loan modification.

31. Ultimately, Nationstar denied the McAlpins for a loan modification, falsely claiming that they had not submitted all of the required documentation. The McAlpins are presently appealing the denial of the modification.

32. Throughout the process of applying for a loan modification, the McAlpins rarely, if ever, were able to communicate with the same Nationstar employee. This led to miscommunications regarding where to send documents, and what documents, if any, were missing.

33. And, at no point have the McAlpins received a notice of trustee's sale in the mail. Instead, they've received hand-delivered notices advising them to call Nationstar.

34. On or about June 10, 2019, Mr. McAlpin received a call from Nationstar. Mr. McAlpin was advised in this first call that no appeal was received or that it had not been uploaded to the file. Mr. McAlpin was advised the last thing was received prior to the appeal.

35. Mr. McAlpin then received a second call on or about June 10, 2019, and Mr. McAlpin was passed along to a supervisor – George Bailey. Mr. Bailey advised Mr. McAlpin that to stop the foreclosure they needed to pay the negative escrow balance of about $1,456.36 before the end of business on June 10, 2019. If not, then the foreclosure would continue, and you'd have to spend thousands on an attorney.

36. Mr. Bailey further advised that unless Mr. McAlpin paid the $1,456.36, they wouldn't evaluate the McAlpins for a modification. He wouldn't provide it in writing.

37. Mr. Bailey called at least 10 more times and, further, threatened that if Mr. McAlpin did not pay the escrow, he would spend thousands more on an attorney. In the last call, Mr. Bailey stated that the loan had been referred to the legal department.

38. Nationstar's actions have damaged the McAlpins. These damages exist regardless of whether they receive a modification based on the pending appeal.

39. Their damages include, but are not limited to, lost time and income, multiple charges for faxing documents to Nationstar, damage to credit, emotional distress, and increased arrearages and other fees on their mortgage.

40. The McAlpins will be irreparably harmed if their home is sold while this litigation is pending.

41. The harm caused by Nationstar during this entire time was reasonably abatable by Nationstar. At all times, Nationstar has retained the discretion to grant the McAlpins a loan modification, cease charging them fees and arrearages, and correct its ongoing tortious conduct.

42. Moreover, permanent damage from Nationstar's conduct is not reasonably certain, because Nationstar still retains the discretion and authority to remedy the on-going harm it has caused the McAlpins at any time.

## COUNT I – MONTANA CONSUMER PROTECTION ACT

43. The preceding paragraphs are realleged as though set forth in full hereunder.

44. The Montana Consumer Protection Act prohibits unfair or deceptive acts or practices in any trade or business. The Act applies to the lending of money and collection of loans.

45. Nationstar's unfair or deceptive acts or practices include, but are not limited to, the following:

   a. Serially "losing" or mishandling the McAlpins' application documents, resulting in the McAlpins sending in multiple sets of the same documents

   b. Providing the McAlpins with inconsistent and contradictory advise.

   c. Failing to timely evaluate the McAlpins for a loan modification;

   d. Not having a single point of contact for the McAlpins to communicate with;

   e. Threatening Mr. McAlpin to make an escrow payment, and refusing to consider a loan modification application absent the payment;

   f. Failing to provide notice of the foreclosure sale in violation of the Small Tract Financing Act; and,

6

    g. "Dual tracking" the McAlpins' loan, simultaneously working with them on a modification while commencing foreclosure.

46. The McAlpins are entitled to all their actual damages; three times actual damages, costs and attorney's fees, and injunctive relief.

## COUNT II – NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

47. The preceding paragraphs are realleged as though set forth in full hereunder.

48. Nationstar owed the McAlpins a duty to comply with The Montana Mortgage Act (MMA) Mont. Code Ann. §§ 32-9-101, *et. seq*. The MMA sets forth duties that a mortgage lenders and loan servicers must comply with, including, but not limited to, a duty to refrain from "directly or indirectly employ[ing] any scheme to…mislead a borrower," "make any misrepresentation or deceptive statement in connection with a residential mortgage loan," or "accept any fees or compensation in excess of those allowed by state or federal law." *See* Mont. Code Ann. § 32-9-124.

49. Nationstar had a further duty to comply with the provisions of § 32-9-170, MCA, which include, but are not limited to, acting "with reasonable skill, care and diligence" and to "safeguard and account for any money handled for the borrower.

50. Nationstar is "mortgage servicer" as defined under the MMA.

51. Nationstar also had a duty to exercise reasonable care or competence in obtaining or communicating information to the McAlpins. This duty arises because Nationstar had a pecuniary interest in the servicing of the McAlpins' loan, in that it was being compensated.

52. Nationstar additionally had a duty to act with honesty and care and skill in its dealings with the McAlpins. Those duties arise from common law including incorporating by expert testimony and statutory duties set forth at § 27-1-701, MCA, § 28-1-202, MCA, and §§ 71-1-

301 et seq., MCA. Those duties further arise because Nationstar's actions constitute a voluntary assumption of the same.

53. Nationstar breached these duties.

54. As a result of Nationstar's breaches, the McAlpins suffered injuries.

55. Nationstar is therefore liable to the McAlpins.

### COUNT III – TORTIOUS BAD FAITH

56. The preceding paragraphs are realleged as though set forth in full hereunder.

57. Nationstar tortiously breached the covenant of good faith and fair dealing between the parties.

58. The McAlpins and Nationstar, acting as a loan servicer on behalf of the creditor are parties to the Deed of Trust and Promissory Note, and are in inherently unequal bargaining positions.

59. The McAlpins did not enter the initial Note and Deed of Trust for "profit," but rather to own a home.

60. Ordinary contract damages are insufficient because they will not result in complete justice and relief.

61. The McAlpins were especially vulnerable because Nationstar had nearly complete control over the servicing of the McAlpins' loan, including the foreclosure and modification process. This vulnerability is evidenced in the fact section above.

62. Nationstar as the loan servicer, was and is aware of the McAlpins' vulnerability.

63. Nationstar is liable for its tortious bad faith acts.

### COUNT V – FAIR DEBT COLLECTION PRACTICES ACT

64. The preceding paragraphs are realleged as though set forth in full hereunder.

8

65. Nationstar is a "debt collector" under the Fair Debt Collection Practices Act (FDCPA).

66. The McAlpins are "consumers" under the FDCPA.

67. Nationstar was attempting to collect a "debt" under the FDCPA.

68. Nationstar's violations of the FDCPA, include, but are not limited to:

   a. Serially "losing" or mishandling the McAlpins' application documents, resulting in the McAlpins sending in multiple sets of the same documents

   b. Providing the McAlpins with inconsistent and contradictory advise.

   c. Failing to timely evaluate the McAlpins for a loan modification;

   d. Not having a single point of contact for the McAlpins to communicate with;

   e. Threatening Mr. McAlpin to make an escrow payment, and refusing to consider a loan modification application absent the payment;

   f. Failing to provide notice of the foreclosure sale in violation of the Small Tract Financing Act; and,

   g. "Dual tracking" the McAlpins' loan, simultaneously working with them on a modification while commencing foreclosure.

69. As a result of these actions, Nationstar is liable for its actual and statutory damages, and attorney fees.

## COUNT VI – PUNITIVE DAMAGES

70. The preceding paragraphs are realleged as though set forth in full hereunder.

71. Punitive damages pursuant to §§ 27-1-220 and 221, MCA, are warranted for the actual fraud and/or actual malice theories set forth above.

## COUNT VII – INJUNCTIVE RELIEF

72. The preceding paragraphs are realleged as though set forth in full hereunder.

73. The McAlpins seek to enjoin Defendant Nationstar pursuant to §§ 27-19-101, *et seq*, MCA, and § 30-14-133, MCA, from conducting a foreclosure sale of their home scheduled for July 11, 2019. The McAlpins will be irreparably harmed if their home is sold pending the resolution of this matter. By separate motion, the McAlpins will seek a temporary restraining order stopping the scheduled sale.

74. The McAlpins seek injunctive relief from any future foreclosure sale for any time necessary for the Court to make its determination as to the loan servicing issues and foreclosure issues, as alleged in this matter.

## PRAYER FOR RELIEF

WHEREFORE, the McAlpins pray for Judgment against Nationstar as follows:

1. That they be awarded all their monetary, property, and actual damages, including but not limited to those for emotional distress, loss of quality of life, embarrassment and loss of time, along with interest on damages;

2. That they be awarded treble damages pursuant to §§ 30-14-133, MCA;

3. That they be awarded attorney fees;

4. That punitive damages be awarded in an amount to be specified at trial;

5. That the Court first enter a temporary restraining order enjoining the Defendant from proceeding with the scheduled trustee's sale pending a show cause hearing, and then preliminarily enjoining the Defendant from selling the property or taking any other action in furtherance of foreclosure, pending the disposition of this lawsuit; and,

6. For such other and further relief as may be just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to M. R. Civ. P 38, Plaintiff hereby demands a jury by trial.

DATED this 12 day of June, 2019.

                MORRISON, SHERWOOD, WILSON & DEOLA

                By _____
                    Robert Farris-Olsen
                    *Attorney for Plaintiff*